# <u>EXHIBIT A</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARC J. GRENIER, AS ADMINISTRATOR OF | : | CIVIL ACTION - 3:14-cv-970 VLB |
| THE ESTATE OF LAURA D. SHEEHAN | : | |
| | : | |
| PLAINTIFF | : | |
| | : | |
| VS. | : | |
| | : | |
| THE STAMFORD HOSPITAL and | : | |
| STAMFORD HEALTH SYSTEM, INC. | : | |
| | : | |
| DEFENDANTS | : | OCTOBER 7, 2014 |

## AMENDED COMPLAINT

### JURISDICTIONAL STATEMENT

The Plaintiff, MARC J. GRENIER, as Administrator of the Estate of LAURA D. SHEEHAN, is a resident of Connecticut as are the defendants. Jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant 28 U.S.C. § 1367. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391.

### COUNT ONE:    VIOLATION OF 42 U.S.C. § 1395dd AS TO THE STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC.

1.     At all times mentioned herein, the defendant, THE STAMFORD HOSPITAL was a domestic non-stock corporation with its principle place of business in Stamford, Connecticut which, through its agents, apparent agents and employees, provided medical care, treatment and advice to its patients.

2.     At all times relevant to this action, the defendant, STAMFORD HEALTH SYSTEM, INC. was a domestic non-stock corporation with its principle place of business in Stamford, Connecticut which, through its agents, apparent agents and employees, provided medical care, treatment and advice to its patients.

1

3.      Beginning in July, 2012, the defendants, THE STAMFORD HOSPITAL, and STAMFORD HEALTH SYSTEM, INC. acting through their agents, apparent agents, ostensible agents, employees or contractors, physicians and nurses, and emergency department staff (hereinafter "medical staff") undertook the care, treatment and supervision of the plaintiff's decedent, LAURA D. SHEEHAN.

4.      On or about July 3, 2012 and continuing until July 11, 2012, the plaintiff's decedent presented to the emergency department operated by defendants, THE STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC. for urgent symptoms.

5.      The injuries and death suffered by LAURA D. SHEEHAN were caused by the acts of THE STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC, acting through their medical staff in violation of 42 U.S.C. § 1395dd, by failing to properly screen or stabilize the plaintiff's decedent or otherwise failing to treat her emergency condition.

6.      As a result of the defendants' violation of 42 U.S.C. § 1395dd, the plaintiff's decedent has suffered the following serious, painful and permanent injuries:

    a.  Cardiopulmonary Accident;

    b.  Acute hypoxic respiratory failure;

    c.  Cerebrovascular accident;

    d.  Physical pain and suffering;

    e.  Emotional distress and anguish; and

    f.  Death.

7.      As a result of the violation by THE STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC. of 42 U.S.C. § 1395dd, the plaintiff's decedent,

LAURA D. SHEEHAN, has been permanently deprived and will in the future be deprived of her ability to carry on and enjoy life's activities and her earning capacity has been destroyed.

8.      As a further result of the violation by THE STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC. of 42 U.S.C. § 1395dd, the plaintiff's decedent has incurred expenses for medical and hospital care, and funeral and burial expenses all to her estate's financial loss.

9.      MARC J. GRENIER was appointed Administrator of the Estate of LAURA D. SHEEHAN on March 19, 2014, by the Probate Court of Stamford, Connecticut. <u>See</u> Exhibit A (attached).

**COUNT TWO:      <u>MEDICAL MALPRACTICE AS TO AS TO THE STAMFORD HOSPITAL, STAMFORD HEALTH SYSTEM, INC., EMERGENCY MEDICINE PHYSICIANS OF FAIRFIELD COUNTY LLC.</u>**

10.      Paragraphs 1 through 9 of Count One are repeated and realleged herein.

11.      Pursuant to C.G.S. § 52-190a(b), the Clerk of the Superior Court, Judicial District of Fairfield at Stamford, has extended the statute of limitations on claims arising from plaintiff's decedent's injuries, as alleged in this Amended Complaint, by ninety days (Exhibit B).

12.      This wrongful death claim is brought pursuant to C.G.S. § 52-555.

13.      Defendant EMERGENCY MEDICINE PHYSICIANS OF FAIRFIELD COUNTY LLC ("EMP") is a domestic limited liability company with a business address located at 30 Shelburne Road, Stamford, CT.

14.      At all relevant times, defendants contracted with EMP for the provision of emergency department services and personnel.

15.     At all relevant times, defendants and EMP, acting through their respective medical staffs provided medical services to plaintiff's decedent.  The provision of said services was within the scope of said medical staffs and in furtherance of the interests of defendants and EMP.

16.     In order to ensure that its patients received proper care and treatment, defendants and EMP had a duty to train, supervise, oversee and direct their medical staffs, and defendants and EMP had a duty to permit only competent and qualified medical professionals to be members of their respective staffs and to ensure that these medical professionals were in attendance and rendered patient care in compliance with applicable standards of care, guidelines, policies, protocols, rules and regulations on a twenty-four hour basis.

17.     At all times relevant to this action, defendants and EMP were responsible for establishing, implementing, and enforcing rules, regulations, bylaws, protocols, guidelines and standards of care regarding the treatment of patients, the training, supervision and monitoring of physicians and other staff in the practice of medicine, and the professional competence and skill of its physicians and other staff members.

18.     At all times relevant to this action, defendants and EMP were required to control and to limit the grant of privileges only to those physicians whose medical care and treatment accorded with the applicable standard of care, and was required to take steps to ensure that all physicians evaluating and treating defendants' patients complied with defendants' rules, regulations, bylaws, protocols, guidelines and standards of care.

19.     At all times relevant to this action, defendants and EMP had the responsibility and duty to deny or withdraw privileges to any physician who did not

4

comport with the applicable rules, regulations, procedures, bylaws and medical standards and defendants had a duty to restrict its medical staff to competent and qualified physicians.

20.     At all times relevant to this action, defendants and EMP, acting through their medical staffs, had a duty to supervise emergency department staff and the care provided to their patients and to control and limit, as it deemed medically appropriate, the care and treatment of their patients, their patients' continuing need for evaluation, treatment and hospitalization, and to take steps to ensure that the standard of care was followed by their physicians, including all of the physicians who evaluated, cared for and treated patients in defendants' emergency department.

21.     On Saturday, July 7, 2012, the plaintiff's decedent engaged the services of defendants and EMP to diagnose, evaluate, follow-up, recommend and render appropriate assessment, treatment and care of her complaints of alcohol intoxication and alcohol addiction. Defendants' and EMP's medical staffs agreed to render the services to the plaintiff's decedent in exchange for compensation.

EVENTS OF JULY 7, 2012

22.     On July 7, 2012, at approximately 1:30 AM, the plaintiff's decedent was admitted to the emergency department at Stamford Hospital /Stamford Health System with a history of alcohol intoxication. She was evaluated by defendants' and/or EMP's emergency department staff who ascertained that she was in no acute distress and arousable to touch and name.  A notation made by a triage nurse noted that she had been "seen here multiple times in the past for same issue."

23.     According to the defendants' medical record, at approximately 7:00 AM a member of defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent "sobered appropriately" and that she "moves all four extremities purposely and symmetrically", that she possessed "5/5 motor strength" and walked with a "normal gait". Defendants' medical record further noted at 7:18 AM that the plaintiff's decedent was found to be awake and responsive that she requested food and then fell back asleep.

24.     At approximately 7:30 AM, the plaintiff's decedent was discharged from the emergency department and noted to be alert and oriented as to person, place and time, and walked with a steady gait. The medical record entry states that the plaintiff's decedent verbalized an understanding of the discharge instructions and was sent to the waiting room where she was to be taken home via taxi.

25.     At 7:43 AM, 17 minutes after her initial discharge, the plaintiff's decedent was readmitted as a patient to defendants' emergency department. The notation in the medical record states that the plaintiff's decedent was reevaluated and now found to be stumbling and walking with an unsteady gait.

26.     At 9:35 AM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was disoriented.

27.     At 12:05 PM, defendants' and/or EMP's emergency department staff reported that the plaintiff's decedent appeared to be no longer oriented as to person, place and time. It was reported that she needed assistance eating breakfast, that she was yelling and that her words were incomprehensible. Said observations differed markedly from observations noted earlier that morning at 10:55 AM.

28.     In response to the plaintiff's decedent's agitation, defendant's and/or EMP's emergency department staff administered a sedative drug, Ativan.

29.     At 3:48 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was unable to stand without assistance.

30.     At 6:10 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent's speech was almost incomprehensible.

31.     At 8:23 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was "still unable to walk even with 2 assists. MD aware."

32.     At 10:03 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was awake and alert and answering questions appropriately. It was also noted that, she was assisted to the bathroom but continued to need assistance as her gait was still altered.

33.     At 10:24 PM, the plaintiff's decedent was noted as being unable to stand on her own and that she had an episode of fecal incontinence.

## EVENTS OF JULY 8, 2012

34.     From the time of her readmission, 7:30 AM on July 7, 2012, through the early morning hours on July 8, 2012, the plaintiff's decedent remained in defendant's emergency department.

35.     At 3:15 AM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent remained unable to ambulate.

36.     At 4:30 AM a member of defendant's and/or EMP's emergency department staff heard Ms. Sheehan moaning loudly.  Upon medical evaluation, neurological deficits were discovered. Testing revealed that the plaintiff's decedent was

7

suffering from a middle cerebral artery infarction, i.e. a stroke. Additional testing
revealed that plaintiff's decedent's blood alcohol level was -0-.

37.    Despite a declining blood alcohol level following the plaintiff's decedent's
initial admission at 1:30 AM on July 7, 2012 and the failure of her neurological status to
improve throughout the time she remained in the emergency department, the onset and
progression of her stroke was not diagnosed by defendants' and/or EMP's medical staff.

38.    At the time the plaintiff's decedent's stroke was diagnosed she was
beyond the point at which any interventional therapy could be administered.

39.    The plaintiff's decedent died on the premises of Stamford Hospital on July
11, 2012 at 12:32 PM.

40.    On July 15, 2012 an autopsy was performed on plaintiff's decedent and
determined that the cause of her death to be a cerebrovascular attack of the left
cerebral area due to thrombosis of the left internal carotid artery, left middle cerebral
artery and left cerebellar infarct due to distal segment thrombosis of the left vertebral
artery.

41.    The death of the plaintiff's decedent was caused by the negligence of
defendants' and/or EMP's medical staffs following her admission on July 7, 2012 in one
or more of the following respects:

      a.  Defendants' and/or EMP's medical staffs failed to diagnose plaintiff's
          decedent's cerebrovacular attack in a timely manner;

      b.  Defendants' and/or EMP's medical staffs failed to act after recognizing
          that the neurological status of plaintiff's decedent was declining;

8

     c.  Defendants' and/or EMP failed to ensure that their medical staffs were following guidelines, practices and policies for patient monitoring;

     d.  Defendants' and/or EMP failed to have a policy in place that ensured a continuity of patient care following shift changes.

42.    As a result of defendants' and/or EMP's negligence:

     a.  The plaintiff's decedent's cerebrovascular attack was undiagnosed and continued to advance causing her death on July 11, 2007;

     b.  The plaintiff's decedent died on July 11, 2007;

     c.  The plaintiff's decedent suffered physical and emotional pain and distress prior to her death;

     d.  The plaintiff's decedent's ability to enjoy and participate in life's activities was permanently destroyed;

     e.  The Estate of Laura Sheehan has incurred funeral and burial expenses, resulting in loss and damage to her Estate.

43.    If the plaintiff's decedent had been given appropriate medical care and treatment, including the administration of TPA that she required, she would have survived.

**WHEREFORE**, the plaintiff claims:

    A.     Money Damages.

    B.     Interest and costs

    C.     Such other and further relief as this court may grant.

## DEMAND FOR TRIAL BY JURY

    The plaintiff demands a trial by jury on all claims.

THE PLAINTIFF,
MARC J. GRENIER, ADMIN.

By_____

Harold R. Burke (CT03332)
Law Offices of Harold R. Burke
21 Sherwood Place
Greenwich, CT 06830
Tele: (203) 219-2301
Fax:  (203) 413-4443
hrb@burke-legal.com
www.burke-legal.com

JOEL T. FAXON  (CT16255)
STRATTON FAXON
59 ELM STREET
NEW HAVEN, CT  06510
TEL 203-624-9500
FAX 203-624-9100
jfaxon@strattonfaxon.com
www.strattonfaxon.com

**CERTIFICATE**

I hereby certify that a reasonable inquiry has been made, as permitted by the circumstances, and this inquiry has given rise to a good faith belief on my part that grounds exist for an action against the defendant.  Pursuant to Connecticut General Statutes § 52-190a, a copy of the redacted written and signed opinion of a similar heath care provider as defined by Connecticut General Statutes § 52-184c, is attached to this certificate as Exhibit B.

Harold R. Burke

# EXHIBIT A

05/05/2014  14:03    2036249100              STRATTON FAXON                    PAGE  02/03

| | |
|---|---|
| **PETITION TO THE CLERK** | **SUPERIOR COURT** |
| **ESTATE OF LAURA SHEEHAN** | |
| <div align="right">**Plaintiff,**</div> | **JUDICIAL DISTRICT** |
| **Vs.** | |
| **VANESSA BROWN, MD., JASON A. FISCHEL M.D., JOMO CODDETT M.D., NIKKI BRADLEY, M.D.,** | **OF** |
| **VANESSA BROCON, M.D., RANDALL GRANT, DO., STAMFORD HOSPITAL,** | **STAMFORD-NORWALK** |
| **STAMFORD HEALTH SYSTEM, INC., THEIR SERVANTS, AGENTS, EMPLOYEES AND ANY OTHER HEALTH CARE PROVIDERS YET TO BE DETERMINED.** | **May 5, 2014** |
| <div align="right">**Defendants.**</div> | |

SUPERIOR COURT
STAMFORD-NORWALK
JUDICIAL DISTRICT
2014 MAY -5  P 2: 39

## PETITION FOR NINETY DAY EXTENSION OF STATUTE OF LIMITATIONS

Pursuant to Connecticut General Statutes Section 52-190a(b), the undersigned hereby

petitions for the AUTOMATIC ninety (90) day extension of the Statute of Limitations

regarding the course of treatment given to Laura Sheehan in Fairfield County, Connecticut,

to allow reasonable inquiry to determine that there was negligence in the care and treatment

by VANESSA BROWN, MD., JASON A. FISCHEL M.D., JOMO CODDETT M.D.,

NIKKI BRADLEY, M.D., VANESSA BROCON, M.D., RANDALL GRANT, DO.,

STAMFORD HOSPITAL, STAMFORD HEALTH SYSTEM, INC., THEIR

SERVANTS, AGENTS, EMPLOYEES AND ANY OTHER HEALTH CARE

PROVIDERS YET TO BE DETERMINED.

The statute of limitations has yet to run.

COUNSEL FOR THE PETITIONER,

JOEL T. FAXON
STRATTON FAXON
TRIAL LAWYERS LLC
59 Elm Street
New Haven, CT 06510
(203) 624-9500
(203) 624-9100
JURIS NO. 421593

## ORDER

The foregoing Petition having been presented to the Clerk of the Court pursuant to Connecticut General Statutes Section 52-190a(b), it is hereby ordered that the statute of limitations be extended for ninety (90) days.

BY THE COURT

Clerk

Dated at Stamford, Connecticut, this 5th day of May, 2014.

# EXHIBIT B

PHYSICIAN OPINION
PURSUANT TO C.G.S. § 52-190A

I am a double board certified physician in both Emergency Medicine and Internal Medicine.  I have reviewed the medical records from July 4, 2012 to July 8, 2012 chronicling Laura Sheehan's medical misadventure at Stamford Hospital. I have been a licensed physician since 1999. I have served as an attending physician in the Emergency Departments of several medical centers located in the New York metropolitan area. As such, I have been and remain, familiar with the standard of care applicable to the care and treatment of individuals presenting at an emergency department.

I have reviewed the medical records of Laura D. Sheehan, including The Stamford Hospital Record for her admissions from July 4, 2012 through July 8, 2012, as well as the pathology report of William Manion, M.D. Ph.D., the report of the Connecticut Department of Public Health dated June 6, 2013, and the death certificate dated July 11, 2012.

From my review of the records, it is my opinion based on reasonable medical probability that there was a departure from the standard of practice by Stamford Hospital staff with respect to Ms. Sheehan's treatment while she was in the Emergency Department. Specifically, Stamford Hospital medical staff failed to recognize a change in status of a hospitalized patient with a previously normal gait and comprehensible speech to one with an inability to walk and garbled speech caused by a devastating cerebrovascular accident.

A review of Stamford Hospital medical records permits the conclusion that Ms. Sheehan's last intake of alcohol occurred sometime prior to 0100 hours on July 7, 2012 and that she would have achieved reasonable sobriety in a predictable amount of time. Therefore, an abnormal mental status and/or neurologic exam would have indicated a problem due to an issue other than being intoxicated. During her time under evaluation, there were clearly documented worsening changes in her neurologic status which either went unrecognized or ignored by the medical team responsible for her care.

On July 7, 2012, Ms. Sheehan was brought to the Stamford Hospital Emergency Department by ambulance after she was reported as being unresponsive. Upon arrival at the Emergency Department she was noted to be arousable and heavily intoxicated. The triage nurse also noted that she was "Seen here multiple times in the past for same issue."
At 0125 hours the initial nursing interaction with the patient noted Ms. Sheehan to be arousable to touch/name.  At 0207 hours, a glucose level was checked, found to be 97 and Dr. Vanessa Brown, Ms. Sheehan's attending physician, was made aware.  0448 hours no change was noted. The notation at 0610 hours stated that the patient was in no acute distress, arousable to touch/name.

At 0652 hours, Dr. Brown dictated her note giving her impression and summary of the encounter.  This included a notation of "serial neuro exams" and a report that Ms. Sheehan did "sober appropriately". It went on to state that she "moves all 4 extremities purposely and symmetrically", "5/5 motor strength", "normal gait".

At 0718 hours, Ms. Sheehan was found to be awake and responsive. She requested food, and then fell back asleep. Eight minutes later discharge instructions were explained to her; she was noted to be alert and oriented to person, place, and time and with a steady gait. She verbalized an understanding of the discharge instructions and was sent to the waiting room and was to be taken home via cab.

At 0743 hours, 17 minutes after discharge, a new "arrival time" is noted as Ms. Sheehan is registered once again as a patient. The triage nurse documents that Ms. Sheehan "stated that she was unable to pay for taxi. Stumbling in waiting room. Unsteady gait. Pt brought back to ER for further evaluation".

A blood alcohol level and other laboratory work were ordered for this encounter.

At 0935 hours, Nurse Rosenfield notes Ms. Sheehan to be disoriented. At 0937 hours, Ms. Sheehan was reported to be stating repeatedly while on phone with her sister that she wants "detox". At 1055 hours, she is noted to be "A&O x 3" (fully alert and oriented). At 1111 hours, the nurse notes the blood alcohol level is pending. The results of the blood alcohol test showed an elevated level of 261.

At 1205 hours, Ms. Sheehan is reported as appearing no longer fully oriented to person, place and time. She needed assistance eating breakfast, she was yelling, and her words were noted to be "incomprehensible" -- a clear change from her earlier noted status.

A sedative drug, Ativan, was ordered thereby implying that a physician was made aware of this behavioral change. However, there is no documentation indicating a physician evaluation at this time.

At 1411 hours, Ms. Sheehan is noted to be resting with her eyes closed.

At 1548 hours, Ms. Sheehan is noted to be now unable to stand without assistance. Dr. Vanstone is notified.

At 1610 hours, Ms. Sheehan's speech is noted to be "almost incomprehensible". The nurse's entry at 1621 hours notes the plan to discharge Ms. Sheehan once her gait is stable. At 1937 hours, Ms. Sheehan eats dinner with assistance. The entry at 2023 hours states that Ms. Sheehan is "still unable to walk even with 2 assists. MD Aware."

At 2203 hours, Ms. Sheehan is noted to be awake and alert, answering questions appropriately, but her speech remains altered. She was assisted to the bathroom but continued to need assistance as her gait was still altered.

At 2224 hours, Ms. Sheehan is still not able to stand on her own and she has an episode of fecal incontinence. Some point thereafter she falls asleep.

At 0315 hours on July 8, 2012, the night nurse has her first interaction with the patient and she is noted to still be unable to ambulate. At 0450 hours bloods are drawn thereby implying that there was a physician evaluation.

A note transcribed at 0751 hours on July 8, 2012 by Dr. Brown documents the encounter from that morning wherein Dr. Brown was finally called to see Ms. Sheehan because of "loud moaning". The note documents a rudimentary evaluation and an initial assessment of alcohol withdrawal. Another intravenous dose of the sedative Ativan was given, labs were sent again, and a CT scan of the head was ordered. The CT scan showed evidence of an evolving stroke and a more detailed neurologic exam was performed and did indeed correlate with the CT findings.

At this point, Ms. Sheehan was diagnosed with a cerebrovascular accident (stroke) and admitted to Stamford Hospital. Her blood alcohol level was found to be 0 indicative of no further intake of ethanol since her initial presentation and the findings that she had "sobered appropriately".

This chronology, taken from Ms. Sheehan's medical chart, evidences that despite a declining blood alcohol level during the course of her admission, her neurologic status worsened and that this worsening was due to an undiagnosed stroke. Stamford Hospital medical staff failed to act in light of her documented declining neurologic status thereby allowing her underlying condition to evolve without intervention resulting in her death.

I reserve the right to amend this opinion as additional material becomes available.

Signature Redacted

## CERTIFICATION OF SERVICE

I hereby certify that on October 7, 2014, a copy of foregoing was filed electronically and served electronically through the ECF system upon all counsel of record.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Harold R. Burke

Harold R. Burke (hb0149)
Law Offices of Harold R. Burke
P.O. Box 4078
21 Sherwood Place
Greenwich, CT 06830
Telephone:  (203) 219-2301
Facsimile:   (203) 413-4443
E-Mail:      hrb@burke-legal.com