**<u>EXHIBIT B</u>**

SUMMONS - CIVIL
JD-CV-1  Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

*See page 2 for instructions*

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 123 HOYT STREET, STAMFORD, CT | ( 203 ) 965-5307 | NOVEMBER 25 2014 |

| | | |
|---|---|---|
| ☒ Judicial District | G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) |
| ☐ Housing Session | Number: | STAMFORD |

Case type code *(See list on page 2)*
Major: **T**   Minor: **28**

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| LAW OFFICES OF HAROLD R. BURKE, 21 SHERWOOD PLACE, GREENWICH, CT 06830 | 307883 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( 203 ) 219-2301 | |

| Number of Plaintiffs: 1 | Number of Defendants: 3 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: MARC J. GRENIER, ADMINISTRATOR OF THE ESTATE OF LAURA D. SHEEHAN<br>Address: 25 BELDEN AVENUE, NORWALK, CT | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: STAMFORD HEALTH SYSTEM, INC., 30 SHELBURNE ROAD, STAMFORD, CT, 06904<br>Address: AGENT FOR SERVICE - CORPORATION SERVICE CENTER, 90 WESTON STREET, HARTFORD, CT | D-01 |
| Additional Defendant | Name: THE STAMFORD HOSPITAL, AGENT FOR SERVICE - CORPORATION SERVICE CENTER<br>Address: 90 WESTON STREET, HARTFORD, CT | D-02 |
| Additional Defendant | Name: EMERGENCY MEDICINE PHYSICIANS OF FAIRFIELD COUNTY, LLC, 30 SHELBURNE RD, STAMFORD, CT<br>Address: AGENT - NATIONAL REGISTERED AGENTS, INC., ONE CORPORATE CENTER, HARTFORD, CT, 06103-3220 | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| | | HAROLD R. BURKE | 10/8/2014 |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

**For Court Use Only**

File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|

A True Copy,
Attest:

Alan M. Freedman, CT State Marshal

Name and address of person recognized to prosecute in the amount of $250
LUCY VIGO, 21 SHERWOOD PLACE, GREENWICH, CT

| Signed *(Official taking recognizance; "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date 10/8/2014 | Docket Number |
|---|---|---|---|

☐ Print Form   (Page 1 of 2)   ☐ Reset Form

RETURN DATE: NOVEMBER 25, 2014      :Superior Court

MARC J. GRENIER,                     :Judicial District of Stamford / Norwalk
ADMINISTRATOR OF THE ESTATE
OF LAURA D. SHEEHAN
                Plaintiff


v.                                 :At Stamford

THE STAMFORD HOSPITAL, THE      :OCTOBER 8, 2014
STAMFORD HEALTH SYSTEM, INC.
AND EMERGENCY MEDICAL
PHYSICIANS OF FAIRFIELD
COUNTY, LLC.
                Defendants


## COMPLAINT

### COUNT ONE:

1.     At all times mentioned herein, the defendant, THE STAMFORD HOSPITAL was a domestic non-stock corporation with its principle place of business in Stamford, Connecticut which, through its agents, apparent agents, contractors and employees, provided medical care, treatment and advice to its patients.

2.     At all times relevant to this action, the defendant, STAMFORD HEALTH SYSTEM, INC. was a domestic non-stock corporation with its principle place of business in Stamford, Connecticut which, through its agents, apparent agents, contractors and employees, provided medical care, treatment and advice to its patients.

3.     At all times relevant to this action, the defendant, EMERGENCY MEDICINE PHYSICIANS OF FAIRFIELD COUNTY LLC ("EMP") was a domestic limited liability company with a business address located at 30 Shelburne Road, Stamford, CT. which,

1

through its members, agents, apparent agents, contractors and employees, provided emergency department staffing, medical care, treatment and advice to the patients of defendants STAMFORD HOSPITAL and STAMFORD HEALTH SYSTEM, INC.

4.      This wrongful death claim is brought pursuant to C.G.S. § 52-555. MARC J. GRENIER was appointed Administrator of the Estate of LAURA D. SHEEHAN on March 19, 2014, by the Probate Court of Stamford, Connecticut. (See Exhibit A).

5.      Pursuant to C.G.S. § 52-190a(b), the Clerk of the Superior Court, Judicial District of Fairfield at Stamford, has extended the statute of limitations on claims arising from plaintiff's decedent's injuries, as alleged in this Complaint, by ninety days. (See Exhibit B).

6.      At all relevant times, defendants and EMP, acting through their respective medical staffs provided medical services to plaintiff's decedent.  The provision of said services was within the scope of said medical staffs and in furtherance of the interests of defendants and EMP.

7.      In order to ensure that its patients received proper care and treatment, defendants and EMP had a duty to train, supervise, oversee and direct their medical staffs, and defendants and EMP had a duty to permit only competent and qualified medical professionals to be members of their respective staffs and to ensure that these medical professionals were in attendance and rendered patient care in compliance with applicable standards of care, guidelines, policies, protocols, rules and regulations on a twenty-four hour basis.

2

8.    At all times relevant to this action, defendants and EMP were responsible for establishing, implementing, and enforcing rules, regulations, bylaws, protocols, guidelines and standards of care regarding the treatment of patients, the training, supervision and monitoring of physicians and other staff in the practice of medicine, and the professional competence and skill of its physicians and other staff members.

9.    At all times relevant to this action, defendants and EMP were required to control and to limit the grant of privileges only to those physicians whose medical care and treatment accorded with the applicable standard of care, and were required to take steps to ensure that all physicians evaluating and treating defendants' patients complied with defendants' rules, regulations, bylaws, protocols, guidelines and standards of care.

10.    At all times relevant to this action, defendants and EMP had the responsibility and duty to deny or withdraw privileges to any physician who did not comport with the applicable rules, regulations, procedures, bylaws and medical standards and defendants had a duty to restrict its medical staff to competent and qualified physicians.

11.    At all times relevant to this action, defendants and EMP, acting through their medical staffs, had a duty to supervise emergency department staff and the care provided to patients and to control and limit, as it deemed medically appropriate, the care and treatment of their patients, their patients' continuing need for evaluation, treatment and hospitalization, and to take steps to ensure that the standard of care was followed by their physicians, including all of the physicians who evaluated, cared for and treated patients in defendants' emergency department.

## EVENTS OF JULY 7, 2012

3

12.     On Saturday, July 7, 2012, at approximately 1:30 AM, the plaintiff's decedent was admitted to the emergency department at Stamford Hospital /Stamford Health System with a history of alcohol intoxication. The plaintiff's decedent engaged the services of defendants and EMP to diagnose, evaluate, follow-up, recommend and render appropriate assessment, treatment and care of her complaints of alcohol intoxication and alcohol addiction. Defendants' and EMP's medical staffs agreed to render the services to the plaintiff's decedent in exchange for compensation.

13.     After arrival at defendants' emergency department, plaintiff's decedent was evaluated by defendants' and/or EMP's emergency department staff who ascertained that she was in no acute distress and arousable to touch and name.  A notation made by a triage nurse noted that she had been "seen here multiple times in the past for same issue."

14.     According to the defendants' medical record, at approximately 7:00 AM a member of defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent "sobered appropriately" and that she "moves all four extremities purposely and symmetrically", that she possessed "5/5 motor strength" and walked with a "normal gait". Defendants' medical record further noted at 7:18 AM that the plaintiff's decedent was found to be awake and responsive, that she requested food and then fell back asleep.

15.     At approximately 7:30 AM, the plaintiff's decedent was discharged from the emergency department and noted to be alert and oriented as to person, place and time, and walked with a steady gait. The medical record entry states that the plaintiff's

4

decedent verbalized an understanding of the discharge instructions and was sent to the waiting room where she was to be taken home via taxi.

16.     At 7:43 AM, 17 minutes after her initial discharge, the plaintiff's decedent was readmitted as a patient to defendants' emergency department. The notation in the medical record states that the plaintiff's decedent was reevaluated and now found to be stumbling and walking with an unsteady gait.

17.     At 9:35 AM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was disoriented.

18.     At 12:05 PM, defendants' and/or EMP's emergency department staff reported that the plaintiff's decedent appeared to be no longer oriented as to person, place and time. It was reported that she needed assistance eating breakfast, that she was yelling and that her words were incomprehensible. Said observations differed markedly from observations noted earlier that morning at 10:55 AM.

19.     In response to the plaintiff's decedent's agitation, defendants' and/or EMP's emergency department staff administered a sedative drug, Ativan.

20.     At 3:48 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was unable to stand without assistance.

21.     At 6:10 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent's speech was almost incomprehensible.

22.     At 8:23 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was "still unable to walk even with 2 assists. MD aware."

23.     At 10:03 PM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent was awake and alert and answering questions appropriately. It was also noted that she was assisted to the bathroom but continued to need assistance as her gait was still altered.

24.     At 10:24 PM, the plaintiff's decedent was noted as being unable to stand on her own and that she had an episode of fecal incontinence.

EVENTS OF JULY 8, 2012

25.     From the time of her readmission, 7:30 AM on July 7, 2012, through the early morning hours on July 8, 2012, the plaintiff's decedent remained in defendant's emergency department.

26.     At 3:15 AM, defendants' and/or EMP's emergency department staff noted that the plaintiff's decedent remained unable to ambulate.

27.     At 4:30 AM a member of defendant's and/or EMP's emergency department staff heard plaintiff's decedent moaning loudly.  Upon medical evaluation, neurological deficits were discovered. Testing revealed that the plaintiff's decedent was suffering from a middle cerebral artery infarction, i.e. a stroke. Additional testing revealed that plaintiff's decedent's blood alcohol level was -0-.

28.     Despite a declining blood alcohol level following the plaintiff's decedent's initial admission at 1:30 AM on July 7, 2012 and the failure of her neurological status to improve throughout the time she remained in the emergency department, the onset and progression of her stroke was not diagnosed by defendants' and/or EMP's medical staff.

6

29.     At the time the plaintiff's decedent's stroke was diagnosed she was beyond the point at which any interventional therapy could be administered.

30.     The plaintiff's decedent died on the premises of Stamford Hospital 12:32 PM. on July 11, 2012.

31.     On July 15, 2012 an autopsy was performed on plaintiff's decedent. The cause of death was determined to be a cerebrovascular attack of the left cerebral area due to thrombosis of the left internal carotid artery, left middle cerebral artery and left cerebellar infarct due to distal segment thrombosis of the left vertebral artery.

32.     The death of the plaintiff's decedent was caused by the negligence of defendants' and/or EMP's medical staffs following her admission on July 7, 2012 in one or more of the following respects:

   a.  Defendants' and/or EMP's medical staffs failed to diagnose plaintiff's decedent's cerebrovascular attack in a timely manner;

   b.  Defendants' and/or EMP's medical staffs failed to act after recognizing that the neurological status of plaintiff's decedent was declining;

   c.  Defendants' and/or EMP failed to manage or ensure that their medical staffs were following guidelines, practices and policies for patient monitoring;

   d.  Defendants' and/or EMP failed to have a policy in place that ensured a continuity of patient care following shift changes.

33.     As a result of defendants' and/or EMP's negligence, the plaintiff's decedent's cerebrovascular attack was undiagnosed and continued to advance causing her death on July 11, 2012.

7

34.     As further result of defendants' and/or EMP's negligence, the plaintiff's decedent suffered physical and emotional pain and distress prior to her death.

35.     As further result of defendants' and/or EMP's negligence, the plaintiff's decedent's ability to enjoy and participate in life's activities was permanently destroyed.

36.     As further result of defendants' and/or EMP's negligence, the Estate of Laura Sheehan has incurred autopsy, funeral and burial expenses, resulting in loss and damage to her Estate.

37.     If the plaintiff's decedent had been given appropriate medical care and treatment, including the administration of TPA that she required, she would have survived.

**WHEREFORE,** the plaintiff claims:

    A. Money damages in an amount in excess of $15,000;

    B. Interest and costs;

    C. Such other and further relief as this court may grant.


THE PLAINTIFF,
MARC J. GRENIER, ADMINISTRATOR
OF THE ESTATE OF LAURA D. SHEEHAN

By _____

Harold R. Burke (307883)
Law Offices of Harold R. Burke
21 Sherwood Place
Greenwich, CT 06830
Tele: (203) 219-2301
Fax:  (203) 413-4443
hrb@burke-legal.com
www.burke-legal.com

# EXHIBIT A

FIDUCIARY'S PROBATE
CERTIFICATE
PC-450 REV. 7/13

**STATE OF CONNECTICUT**

**COURT OF PROBATE**

| COURT OF PROBATE, Stamford Probate District | DISTRICT NO. PD53 | |
|---|---|---|
| ESTATE OF/IN THE MATTER OF<br><br>Laura D. Sheehan, , AKA Laura Dolores Sheehan, deceased   (12-0423D) | | DATE OF CERTIFICATE<br><br>*March 19, 2014*<br>*Valid for:*<br>1 year from this date |
| FIDUCIARY'S NAME AND ADDRESS<br><br>Marc J. Grenier, Esq., DePanfilis & Vallerie, 25 Belden Avenue, P. O. Box 699, Norwalk, CT 06852 | FIDUCIARY'S POSITION OF TRUST<br><br>Administrator | DATE OF APPOINTMENT<br><br>March 19, 2014 |

*The undersigned hereby certifies that the fiduciary of the above-named estate has accepted appointment, has executed bond according to law or has been excused from executing bond by will or by statute, and is legally authorized and qualified to act as such fiduciary on said date because said appointment is unrevoked and in full force as of the above date of certificate.*

*Limitation, if any, on the above certificate:* There shall be no withdrawal from any Resticted Account(s) without prior written Court approval.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of this Court on the above date of certificate.

.................................... *Nelly V. Slocum* ....................................
Nelly V. Slocum, Clerk

**Court
Seal**

**NOT VALID WITHOUT COURT OF PROBATE SEAL IMPRESSED**

FIDUCIARY'S PROBATE CERTIFICATE
C-450

# EXHIBIT B

| PETITION TO THE CLERK | SUPERIOR COURT |
|---|---|
| ESTATE OF LAURA SHEEHAN<br>Plaintiff, | JUDICIAL DISTRICT |
| Vs. | OF |
| VANESSA BROWN, MD., JASON A. FISCHEL M.D., JOMO CODDETT M.D., NIKKI BRADLEY, M.D., VANESSA BROCON, M.D., RANDALL GRANT, DO., STAMFORD HOSPITAL, STAMFORD HEALTH SYSTEM, INC., THEIR SERVANTS, AGENTS, EMPLOYEES AND ANY OTHER HEALTH CARE PROVIDERS YET TO BE DETERMINED.<br>Defendants. | STAMFORD-NORWALK<br><br>May 5, 2014 |

SUPERIOR COURT
STAMFORD-NORWALK
JUDICIAL DISTRICT
2014 MAY -5 P 2:39

## PETITION FOR NINETY DAY EXTENSION OF STATUTE OF LIMITATIONS

Pursuant to Connecticut General Statutes Section 52-190a(b), the undersigned hereby petitions for the AUTOMATIC ninety (90) day extension of the Statute of Limitations regarding the course of treatment given to Laura Sheehan in Fairfield County, Connecticut, to allow reasonable inquiry to determine that there was negligence in the care and treatment by VANESSA BROWN, MD., JASON A. FISCHEL M.D., JOMO CODDETT M.D., NIKKI BRADLEY, M.D., VANESSA BROCON, M.D., RANDALL GRANT, DO., STAMFORD HOSPITAL, STAMFORD HEALTH SYSTEM, INC., THEIR SERVANTS, AGENTS, EMPLOYEES AND ANY OTHER HEALTH CARE PROVIDERS YET TO BE DETERMINED.

The statute of limitations has yet to run.

COUNSEL FOR THE PETITIONER,

JOEL T. FAXON
STRATTON FAXON
TRIAL LAWYERS LLC
59 Elm Street
New Haven, CT 06510
(203) 624-9500
(203) 624-9100
JURIS NO. 421593

## ORDER

The foregoing Petition having been presented to the Clerk of the Court pursuant to Connecticut General Statutes Section 52-190a(b), it is hereby ordered that the statute of limitations be extended for ninety (90) days.

BY THE COURT

Clerk

Dated at Stamford, Connecticut, this 5th day of May, 2014.

# EXHIBIT C

## CERTIFICATE

I hereby certify that a reasonable inquiry has been made, as permitted by the circumstances, and this inquiry has given rise to a good faith belief on my part that grounds exist for an action against the defendant.  Pursuant to Connecticut General Statutes § 52-190a, a copy of the redacted written and signed opinion of a similar heath care provider as defined by Connecticut General Statutes § 52-184c, is attached to this certificate as Exhibit C.

Harold R. Burke

10

PHYSICIAN OPINION
PURSUANT TO C.G.S. § 52-190A

I am a double board certified physician in both Emergency Medicine and Internal Medicine. I have reviewed the medical records from July 4, 2012 to July 8, 2012 chronicling Laura Sheehan's medical misadventure at Stamford Hospital. I have been a licensed physician since 1999. I have served as an attending physician in the Emergency Departments of several medical centers located in the New York metropolitan area. As such, I have been and remain, familiar with the standard of care applicable to the care and treatment of individuals presenting at an emergency department.

I have reviewed the medical records of Laura D. Sheehan, including The Stamford Hospital Record for her admissions from July 4, 2012 through July 8, 2012, as well as the pathology report of William Manion, M.D. Ph.D., the report of the Connecticut Department of Public Health dated June 6, 2013, and the death certificate dated July 11, 2012.

From my review of the records, it is my opinion based on reasonable medical probability that there was a departure from the standard of practice by Stamford Hospital staff with respect to Ms. Sheehan's treatment while she was in the Emergency Department. Specifically, Stamford Hospital medical staff failed to recognize a change in status of a hospitalized patient with a previously normal gait and comprehensible speech to one with an inability to walk and garbled speech caused by a devastating cerebrovascular accident.

A review of Stamford Hospital medical records permits the conclusion that Ms. Sheehan's last intake of alcohol occurred sometime prior to 0100 hours on July 7, 2012 and that she would have achieved reasonable sobriety in a predictable amount of time. Therefore, an abnormal mental status and/or neurologic exam would have indicated a problem due to an issue other than being intoxicated. During her time under evaluation, there were clearly documented worsening changes in her neurologic status which either went unrecognized or ignored by the medical team responsible for her care.

On July 7, 2012, Ms. Sheehan was brought to the Stamford Hospital Emergency Department by ambulance after she was reported as being unresponsive. Upon arrival at the Emergency Department she was noted to be arousable and heavily intoxicated. The triage nurse also noted that she was "Seen here multiple times in the past for same issue."
At 0125 hours the initial nursing interaction with the patient noted Ms. Sheehan to be arousable to touch/name. At 0207 hours, a glucose level was checked, found to be 97 and Dr. Vanessa Brown, Ms. Sheehan's attending physician, was made aware. 0448 hours no change was noted. The notation at 0610 hours stated that the patient was in no acute distress, arousable to touch/name.

At 0652 hours, Dr. Brown dictated her note giving her impression and summary of the encounter. This included a notation of "serial neuro exams" and a report that Ms. Sheehan did "sober appropriately". It went on to state that she "moves all 4 extremities purposely and symmetrically", "5/5 motor strength", "normal gait".

At 0718 hours, Ms. Sheehan was found to be awake and responsive. She requested food, and then fell back asleep. Eight minutes later discharge instructions were explained to her; she was noted to be alert and oriented to person, place, and time and with a steady gait. She verbalized an understanding of the discharge instructions and was sent to the waiting room and was to be taken home via cab.

At 0743 hours, 17 minutes after discharge, a new "arrival time" is noted as Ms. Sheehan is registered once again as a patient. The triage nurse documents that Ms. Sheehan "stated that she was unable to pay for taxi. Stumbling in waiting room. Unsteady gait. Pt brought back to ER for further evaluation".

A blood alcohol level and other laboratory work were ordered for this encounter.

At 0935 hours, Nurse Rosenfield notes Ms. Sheehan to be disoriented. At 0937 hours, Ms. Sheehan was reported to be stating repeatedly while on phone with her sister that she wants "detox". At 1055 hours, she is noted to be "A&O x 3" (fully alert and oriented). At 1111 hours, the nurse notes the blood alcohol level is pending. The results of the blood alcohol test showed an elevated level of 261.

At 1205 hours, Ms. Sheehan is reported as appearing no longer fully oriented to person, place and time. She needed assistance eating breakfast, she was yelling, and her words were noted to be "incomprehensible" – a clear change from her earlier noted status.

A sedative drug, Ativan, was ordered thereby implying that a physician was made aware of this behavioral change. However, there is no documentation indicating a physician evaluation at this time.

At 1411 hours, Ms. Sheehan is noted to be resting with her eyes closed.

At 1548 hours, Ms. Sheehan is noted to be now unable to stand without assistance. Dr. Vanstone is notified.

At 1610 hours, Ms. Sheehan's speech is noted to be "almost incomprehensible". The nurse's entry at 1621 hours notes the plan to discharge Ms. Sheehan once her gait is stable. At 1937 hours, Ms. Sheehan eats dinner with assistance. The entry at 2023 hours states that Ms. Sheehan is "still unable to walk even with 2 assists. MD Aware."

At 2203 hours, Ms. Sheehan is noted to be awake and alert, answering questions appropriately, but her speech remains altered. She was assisted to the bathroom but continued to need assistance as her gait was still altered.

At 2224 hours, Ms. Sheehan is still not able to stand on her own and she has an episode of fecal incontinence. Some point thereafter she falls asleep.

At 0315 hours on July 8, 2012, the night nurse has her first interaction with the patient and she is noted to still be unable to ambulate. At 0450 hours bloods are drawn thereby implying that there was a physician evaluation.

A note transcribed at 0751 hours on July 8, 2012 by Dr. Brown documents the encounter from that morning wherein Dr. Brown was finally called to see Ms. Sheehan because of "loud moaning". The note documents a rudimentary evaluation and an initial assessment of alcohol withdrawal. Another intravenous dose of the sedative Ativan was given, labs were sent again, and a CT scan of the head was ordered. The CT scan showed evidence of an evolving stroke and a more detailed neurologic exam was performed and did indeed correlate with the CT findings.

At this point, Ms. Sheehan was diagnosed with a cerebrovascular accident (stroke) and admitted to Stamford Hospital. Her blood alcohol level was found to be 0 indicative of no further intake of ethanol since her initial presentation and the findings that she had "sobered appropriately".

This chronology, taken from Ms. Sheehan's medical chart, evidences that despite a declining blood alcohol level during the course of her admission, her neurologic status worsened and that this worsening was due to an undiagnosed stroke. Stamford Hospital medical staff failed to act in light of her documented declining neurologic status thereby allowing her underlying condition to evolve without intervention resulting in her death.

I reserve the right to amend this opinion as additional material becomes available.

Signature Redacted