UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARC J. GRENIER, <br> AS ADMINISTRATOR OF THE <br> ESTATE OF LAURA D. SHEEHAN, <br><br> Plaintiff, <br><br> v. <br><br><br> THE STAMFORD HOSPITAL <br> STAMFORD HEALTH SYSTEM, <br> INC., AND EMERGENCY MEDICINE <br> PHYSICIANS OF FAIRFIELD, <br><br> Defendants. | CIVIL ACTION NO. <br> 3:14-cv-0970 (VLB) <br><br> May 23, 2017 |

## MEMORANDUM OF DECISION GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 69.]

Plaintiff Marc Grenier ("Grenier"), in his capacity as administrator of the estate of Laura D. Sheehan, brings this medical malpractice claim against Defendants Stamford Hospital, Stamford Health System, Inc., and Defendant Emergency Medicine Physicians of Fairfield ("EMP") (collectively, "Defendants") under Connecticut law, for injuries and the ultimate death of Sheehan while in the care of Defendants. [Dkts. 1, 10, 75.] In Plaintiff's Amended Complaint, he claimed federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. [Dkt. 10 at 1.] Although Defendants challenged jurisdiction in their Rule 26(f) Report, they have not affirmatively asserted any challenge to the court's jurisdiction. [Dkt. 28 at 2.] Defendants move for summary judgment, asserting Plaintiff has disclosed no expert witnesses and cannot prevail on his medical malpractice claim without one. [Dkt. 69.] Plaintiff's sole response to Defendant's Motion for Summary

1

Judgment is that this Court no longer has subject matter jurisdiction over this matter, as Plaintiff amended his Complaint to withdraw his federal claim under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd., *et seq*, leaving only state law claims. [Dkt. 78 (Opposition to Motion for Summary Judgment); Dkt. 75 (Amended Complaint.] Defendants, in an apparent retraction of their earlier challenge to the Court's jurisdiction, replied that the Court should exercise its discretion to retain jurisdiction in this matter as substantial time and resources have already been expended litigating this matter in federal court. [Dkt. 81.] For the reasons set forth below, the Court holds that it retains subject matter jurisdiction. In addition, unless Plaintiff produces an admissible expert opinion supporting his medical malpractice claim within 7 business days of the date of this Order, by June 2, 2017, the Court will enter summary judgment for the Defendants on June 5, 2017.

I. <u>Procedural Background</u>

Plaintiff brought his Complaint on July 3, 2014, alleging Defendants Stamford Hospital and Stamford Health System, Inc. violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd., *et seq*. . [Dkt. 1.] On October 7, 2014, Plaintiff filed an Amended Complaint to add a second claim alleging Stamford Hospital, Stamford Health System, Inc., and Emergency Medicine Physicians of Fairfield County LLC committed medical malpractice causing Plaintiff's decedent's wrongful death in violation of Connecticut General Statute § 52-555. [Dkt. 10.] Plaintiff included with the

2

amendment an Order from the Connecticut Superior Court extending the statute of limitations for the medical malpractice claim.  *Id.* at Ex. A.

Defendants moved to dismiss count one of the Amended Complaint on December 1, 2014.  [Dkt. 24.]  Plaintiff filed an Objection [Dkt. 27] and Defendants filed a Reply in Further Support [Dkt. 29].  On September 29, 2015, the Court denied Defendants' Motion in a fifteen-page decision, finding Plaintiff had asserted a claim for EMTALA violations.  [Dkt. 37.]

The parties requested significant Court intervention in the discovery process.  On November 27, 2015, Plaintiffs filed a Motion to Compel production of certain documents and interrogatory responses. [Dkt. 41.]  Contemporaneous therewith, Defendants filed a Motion for Protective Order concerning the same documents.  [Dkt. 46.]  The Court held a hearing on January 8, 2016 and took the motion under advisement to afford the parties an opportunity to resolve the disputed issues.  [Dkt. 55.]  On January 29, 2016, the Court held a follow-up telephonic hearing, at which the parties conveyed that they could not agree on the extent to which the Defendants could assert privilege over peer review materials under Connecticut law.  [Dkt. 58.]  The Court found the privilege applied in a fourteen-page Memorandum of Decision on July 20, 2016.  [Dkt. 60.]

On July 20, 2016, the Court amended the Scheduling Order to extend all deadlines to accommodate the complexity of discovery.  [Dkt. 63.]  On December 28, 2016, Plaintiff moved to amend the complaint to withdraw his EMTALA claim because "after conducting documentary discovery on the claims, [Plaintiff] does not wish to devote [his] resources to further litigation of the EMTALA claim in

light of the discovery and in light of the fact that any discovery will not be enhanced by the EMTALA claim." [Dkt. 68 at 3.] Plaintiff's motion also stated "[i]t should be noted that removal of the federal claim will have the effect of also removing federal question jurisdiction from this case." *Id*. at 1. Defendants did not object to the Motion to Amend. [Dkt. 71.] The Court granted Plaintiff's Motion to Amend on January 19, 2017, but did not decide the amendment's impact on jurisdiction. [Dkt. 74.]

During the same time frame, on January 3, 2017, the Court referred the parties to a Magistrate Judge for a settlement conference. [Dkt. 70.] On January 27, the parties informed the Magistrate Judge that settlement discussions would not be productive and no settlement conference was scheduled. [Dkt. 80.]

Five days after Plaintiffs' Motion to Amend, inclusive of the New Year's holiday, Defendants filed their Motion for Summary Judgment asserting Plaintiff cannot prevail on his medical malpractice claim absent expert testimony. [Dkt. 69.] Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment on January 23, 2017. [Dkt. 78.] The three-page Opposition does not address the merits of Defendants' claim that Plaintiff cannot prevail on his medical malpractice claims without expert evidence. *Id*. Rather, the Opposition only asserts the Court no longer has subject matter jurisdiction over this case since Plaintiff withdrew his federal EMTALA claim. *Id*. Defendants respond urging the Court to exercise its discretion and retain jurisdiction over this action as "[s]ignificant judicial resources and efforts on the part of the defendants have been expended to date." [Dkt. 81.]

4

II. **Statement of Law**

The federal courts possess subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," known as federal question jurisdiction, and over "civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between – (1) citizens of different states; (2) citizens of a State and citizens or subjects of a foreign state [with certain exceptions]; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States," known as diversity jurisdiction. 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction). In addition, federal courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ("[I]t is well established – in certain classes of cases – that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."). This holds true unless the claims concern new parties to be added to the case who would destroy diversity jurisdiction. 28 U.S.C. § 1367(b).

Section 1367 codified two Supreme Court decisions discussing the parameters of pendent and ancillary jurisdiction, upon which the supplemental jurisdiction is based. *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), codified in 28 U.S.C. § 1367(a), articulated pendent jurisdiction, which applies where a case

5

is properly in federal court through federal question jurisdiction and the plaintiff also asserts a state-law claim which would not fall under the federal court's original jurisdiction on its own. In such cases the federal court may exercise pendent jurisdiction to hear all claims as long as they arise out of the same case or controversy. 28 U.S.C. 1367(a); *Gibbs*, 383 U.S. at 725. Even where claims qualify for pendent jurisdiction under Section 1367(a), federal courts maintain discretion to exercise or decline to exercise pendent jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-40 (1988) (citing *Gibbs*, 383 U.S. at 726-27). Courts considering whether to exercise pendent jurisdiction over state-law claims consider whether doing so would promote judicial economy, convenience, and fairness to the parties without violating principles of comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-40 (1988). "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values. " *Carnegie-Mellon,* 484 U.S. at 351.

Relatedly, *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376-77 (1978), codified in 18 U.S.C. § 1367(b), defined the subcategory of supplemental jurisdiction known as ancillary jurisdiction. Ancillary jurisdiction allows the addition of claims against new parties (whether raised through joinder, intervention, impleader, cross-claim, or counterclaim) which would not, on their own, trigger the federal court's original jurisdiction, as long as those claims arise out of a "common nucleus of operative fact." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165-66 (1997). However, where the new parties would

destroy diversity, they may not be added, even if the claims against them arise out of a common nucleus of operative fact with claims properly in federal court. 28 U.S.C. § 1367(b); *Owen*, 437 U.S. at 376-77.

Where a district court has exercised supplemental jurisdiction but later dismisses all claims over which it had original jurisdiction, "[t]he district courts may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1376(c)(3). The Court is not, however, required to decline jurisdiction. On the contrary, "[t]he discretion implicit in the word "may" in **subdivision (c) of § 1367** permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants."[1] *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (citing *Castellano v. Bd. of Trustees, et al.,* 937 F.2d 752, 758 (2d Cir. 1991). "[A]s a general proposition, . . . if all federal claims are dismissed before trial, the state claims should be dismissed as well." *Motorola Credit Corp.*, 388 F.3d at 56. However, a court acts within its discretion in retaining jurisdiction where all federal claims are dismissed "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims," such that "knocking [the parties] down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary." *Id.* at 56; *Purgess*, 937 F.2d at 138 (citing **28 U.S.C.A. 1367**, Practice Commentary (1993) at 835).

---

[1] In 2004, the Second Circuit reiterated the factors for consideration: "judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).

7

A case need not have proceeded to the eve of trial in order for the court and the parties to have expended significant resources rendering supplemental jurisdiction appropriate. For example, in *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir. 1998), the Second Circuit found the district court appropriately exercised supplemental jurisdiction to retain the action and decide the defendant's summary judgment motion where the parties had settled the federal jurisdiction-conferring claim eleven months prior. The parties had been engaged in litigation for four months when they settled the jurisdiction-conferring claim, after which the defendant moved for summary judgment, the court held a hearing on the motion and opposition, and the court rendered a summary judgment decision. *Id.* at 104-05. The district court litigation lasted a total of one year and eight months. *Id.* The Second Circuit found the district court properly retained jurisdiction because the parties "had already engaged in discovery under an expedited discovery schedule and held a settlement conference before a magistrate" by the time they settled the federal jurisdiction-conferring claim. *Id.* at 105.

III. <u>Analysis</u>

From its inception, this Court has maintained supplemental pendent jurisdiction over Plaintiff's state and federal claims. All claims arise out of a single set of operative facts, challenging the sufficiency of the medical treatment Defendants provided. The claims comprise one case which should be logically tried together. 28 USC 1367(a); *Carnegie-Mellon,* 484 U.S. at 351; *Gibbs*, 383 U.S. at 725.

The litigation has been ongoing for two years and nearly eleven months. *Id.* The deadline to complete discovery, including any expert disclosures, was nearly six months ago, and trial is imminent. [Dkt. No. 63.] The Court and the parties have expended significant time and effort moving for and opposing dismissal, completing discovery, participating in two hearings, and moving for and opposing summary judgment. In fact, Defendants assert in their Reply in Support of Summary Judgment that certain discovery relating to the now-abandoned EMTALA claim "took two Hospital employees working a full five days to conduct, at a cost of approximately $4,000 and resulted in over 400 separate patient charts. The results then had to be reviewed by individuals in medical records and by [defense] counsel for accuracy." [Dkt. 81 at 2.] Now, after summary judgment briefing has been filed and with jury selection scheduled for June 27, 2017, the Court faces a request to remand to Connecticut State Court. Given the time and resources the parties have expended litigating this case for the last almost three years, fairness and comity weigh in favor of retaining jurisdiction. *See Ametex Fabrics*, 140 F.3d at 105.

In addition, the Court has expended significant time and effort deciding the Defendants' Motion to Dismiss and resolving complex discovery disputes in this matter. [Dkts. 55 (Hearing on Motion to Compel), 58 (Telephonic Hearing on Motion to Compel, 60 (Memorandum of Decision on Motion to Compel).] The Court is familiar with the facts and history of the case, and judicial fairness and convenience weigh in favor of this Court retaining the action rather than remanding it to Connecticut State Court. *Ametex Fabrics*, 140 F.3d at 105.

9

Further, the timing of Plaintiff's actions suggests an attempt at forum shopping. The deadline to complete discovery, including any expert disclosures, was December 1, 2016. [Dkt. 63.] Plaintiff filed no expert disclosures in support of his medical malpractice or EMTALA claims. [Dkt. 69-3 (Declaration of Vimala B. Ruszkowski).] Less than one month after the deadline passed, and five days before the deadline for Defendants to move for summary judgment, Plaintiff moved to amend the Complaint to remove his federal claim. [Dkt. 68.] Plaintiff asserts the Court was divested of jurisdiction five calendar days before Defendants moved for summary judgment for failure to disclose any expert witnesses, a failure that appears from Defendants' pleadings to be fatal (although, as stated below, the Court withholds any such judgment at this time). To the extent Plaintiff's actions are an attempt to re-try his case through forum shopping, they are improper. *See generally Hanna v. Plumer*, 380 U.S. 460, 468 (1965) ("the twin aims of the *Erie* rule . . . are discouragement of forum-shopping and avoidance of inequitable administration of the laws").

For the aforementioned reasons, in the interests of fairness, comity, judicial efficiency, and convenience, the Court retains supplemental jurisdiction over Plaintiff's medical malpractice claims under Connecticut law. *Purgess*, 33 F.3d at 138.

IV. <u>Plaintiffs' Medical Malpractice Claim</u>

It is both well and long established that under Connecticut law a plaintiff alleging medical malpractice must present expert testimony. *Campbell v. Pommier*, 5 Conn. App. 29, 32 (Conn. App. Ct. 1985) ("In Connecticut, both breach

of the standard of care and proximate cause must be proved by expert testimony"). A plaintiff must establish through expert testimony: (1) the applicable standard of care, (2) the defendant's breach of that standard, and (3) that the breach proximately caused the injury. *Pisel v. Stamford Hosp.*, 180 Conn. 314, 334 - 42 (1980). Summary judgment is appropriate where it is evident that the plaintiff cannot produce such expert testimony. *See Guzze v. New Britain Gen. Hosp.*, 16 Conn. App. 480, 484–85 (Conn. App. Ct. 1988); *Stowe v. McHugh*, 46 Conn. App. 391, 398 (Conn. App. Ct. 1997). Plaintiff has failed to disclose an expert or to show good cause why the Court should reopen discovery to enable Plaintiff to disclose an expert. Consequently it appears futile not to enter summary judgment for Defendants.

V. <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted if Plaintiff does not file a motion for a short extension of the discovery deadline to complete expert discovery satisfying the good cause standard set forth in Local Rule of Civil Procedure 7(b). Any such motion must be accompanied by an expert report authored by a qualified medical expert satisfying the criteria for an admissible expert opinion set forth in Federal Rule of Civil Procedure 26, Federal Rules of Evidence 702, 703, and 705, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In particular, in accordance with the criteria established in *Daubert* and the aforementioned Rules, any expert opinion offered must describe the expert's training and experience relevant to this case, state an opinion that one or more of the

**Defendants failed to satisfy the requisite standard of care concerning Ms. Sheehan, and articulate a plausible basis for that conclusion. Any such motion and expert report must be filed by Plaintiff within 7 business days of the date of this Order, by Friday, June 2, 2017. If Plaintiff fails to do so, the Court will enter summary judgment in favor of Defendants on Monday, June 5, 2017.**

                                          **IT IS SO ORDERED.**

                                          _____/s/_____
                                          **Hon. Vanessa L. Bryant**
                                          **United States District Judge**

**Dated at Hartford, Connecticut: May 23, 2017**